FERNWOOD LUMBER CO. *v.* MEEHAN-ROUNDS LUMBER CO.

1. CHANCERY COURTS. *Jurisdiction. Fraudulent conveyances. Code* 1892, § 503. *Lis pendens. Code* 1892, §§ 2782–2789.

The provision of Code 1892, § 503, enlarging the chancery court jurisdiction of bills by creditors to vacate fraudulent conveyances, that the creditor shall have a lien on the property from the filing of his bill, except as against *bona fide* purchasers before the service of process on the defendant, is not affected by Code 1892, §§ 2782-2789, the chapter on *lis pendens*, the two statutes referring to different classes of litigants.

2. SAME. *Practice. Process. Non–resident defendants. Code* 1892, § 3421. *When service complete.*

A non-resident defendant in chancery, under Code 1892, §3421, regulating process by publication and mailing for such defendants, is not served with process so as to authorize proceedings against him as if personally served until the completion of the required publication, and, in case his postoffice be known, the proper mailing of a summons to him.

3. SAME. *Concrete case.*

Where, in a suit under Code 1892, § 503, *supra,* to set aside a conveyance as fraudulent, a *lis pendens* notice was filed, under Code 1892, §§ 2782, 2789, *supra,* but the grantee in the deed, a non-resident defendant, without actual notice of the suit, conveyed the property to a *bona fide* purchaser before the completion of the publication and mailing of process against him, under Code 1892, § 3421, *supra,* the purchaser will be protected in his title.

FROM the chancery court of Lauderdale county.

HON. STONE DEAVOURS, Chancellor.

The Meehan-Rounds Lumber Company, the appellee, was the complainant, and the Fernwood Lumber Company, the appellant, was defendant in the court below. From a decree in complainant's favor the defendant appealed to the supreme court. The opinion states the facts of the case.

*A. S. Bozeman,* for appellant.

It was contended by the appellee that it was a *bona fide* purchaser for value of the lands in question without notice of the pendency of the said suit between this appellant and Greene and Thomas, and without knowledge of the fraudulent character of the conveyance from Greene to Thomas, and that it acquired good title to said lands unaffected by the decree in said cause.

On the contrary, it was contended by this appellant that by the filing of its creditors' bill, under sec. 503 of the annotated code, on February 5th, 1902, and by the filing and record of its *lis pendens* notice on the same date, and by the first publication of the summons for the defendant on February 15th, 1902, it acquired a lien upon the property in question as against appellee, and that the final decree rendered in said cause condemning said property to be sold to pay the amount of said decree was binding against the appellee, who did not acquire title to said property until February 18th, 1902.

The court below held that the appellant's lien on the lands in question, acquired in the suit of this appellant against Greene and Thomas, did not become effective as against the appellee, who was not a party to the suit, until after the completion of the publication for the non-resident defendants. We submit that the court erred in this and that the decree should be reversed.

"The general and established rule is that a *lis pendens,* a pending suit in equity, duly prosecuted and not collusive, is notice to a purchaser of the property in dispute from a party to the litigation, so as to affect and bind his interest by the decree;

and the *lis pendens* begins from the service of the subpoena after the bill is filed." 2 Pom. Eq., 632.

Based upon the rule of necessity, a theory adopted by some courts of the highest authority, Mr. Pomeroy formulates the general rule as follows: "During the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponents."

This is the *rationale* of the doctrine adopted by the courts of this state. This court says: "The technical notice arising from *lis pendens* has its foundation in necessity; for it would be impossible for any suit to be brought to a successful termination if alienations pending the suit could prevail." *Allen* v. *Poole,* 54 Miss., 333.

The appellee claims to be a *bona fide* purchaser for value from Thomas, one of the defendants in the suit of this appellant against Greene and Thomas, without notice of the pendency of that suit; and the question, therefore, is, When did that suit become *lis pendens* as to appellee?

The defendants in that suit were non-residents of this state (though the land in question was situated in Lauderdale county), and the service of process upon the defendants was by publication.

The bill was filed on February 5th, and the first publication was made for the defendants on February 15th. (We omit now wholly the consideration of the *lis pendens* notice and its effect.) Copies of the publication were mailed to the defendants on February 20th, and the three weeks were completed on March 7th, the third publication having been made on March 1st.

The deed from the defendant, Thomas, to the appellee was delivered and the purchase price paid on February 18th of the same year. The question, then, is, on the facts of this case, Did the suit become *lis pendens* as to appellee on the filing of the bill and the first publication for the defendants? If so, then the appellee is a purchaser *pendente lite,* and is bound by the decree in that case; because, up to the time of the first publication,

February 15th, the appellee had done nothing by which it came within the definition of an innocent purchaser, which is that he is one who, at the time of his purchase, advances some new consideration, surrenders some security, or does some other act, which leaves him in a worse position should his purchase be set aside.    Perry, Trusts, sec. 239.

But if that suit did not become *lis pendens,* as to appellee, until the completion of the three-weeks publication, and if it required the full three-weeks publication to constitute service of process upon the defendants within the meaning of sec. 503 of the code, then (unless appellant is protected by filing the *lis pendens* notice) the appellee is within the exception in sec. 503 and is not affected by the decree in that case.

I submit that under sec. 503 the appellant acquired a lien on the property in question, as against appellee, upon filing the bill and the first publication of the summons.    I have been unable to find any decision of this or any other court upon this exact point; and in so far as I have been able to ascertain, it is an open question in this state.    Looking then to the statute, sec. 503, and the rule of *lis pendens* as it existed prior to the statute, we find the reason of the rule as stated by this court in the case of *Allen* v. *Poole, supra,* and as stated more fully by Chancellor Kent in the leading case of *Murray* v. *Ballou,* 1 Johns' Ch., 566, to be that "without it, as has been observed in some of the cases, a man, upon service of subpoena, might alienate his lands and prevent the justice of the court.    Its decrees might be wholly evaded."

Our contention, therefore, that the suit becomes *lis pendens* on filing the bill and making the first publication of summons, is clearly within the reason of the rule.

The first publication of the summons, as much as the service of process personally, notifies the defendant of the pendency of the suit, and it is from this date that the temptation or purpose comes to the dishonest defendant to evade the decree of the court by an alienation of the property in question.    And unless

the suit becomes *lis pendens* from this date—or, in other words, if the non-resident defendant has three full weeks after the first publication of summons, within which he may alienate the property in litigation—then the reason of the rule is nullified, and the non-resident defendant is not only not prevented from evading the decree of the court, but is actually given notice that he has three weeks within which he may evade it.

It will not do to say that the "service of process" required by the rule and by the statute is personal service only, and actual notice of the pendency of the suit, because it is established that such service of process may be by any of the modes prescribed by statute—*e. g.*: (1) By leaving a copy of the summons at the usual place of abode of an absent defendant, with a member of his family, or (2) by posting a copy on his door, or (3) by publication.

All these modes of service of process, except by publication, consist of one instantaneous act. Service by publication is a continuous act extending over a period of three weeks. Now, if it were possible for a defendant upon whom process was being served—*e. g.*, by posting a copy on the door—to alienate the property after the act of posting began and before it was completed, no court would hold that the *lis pendens* had not attached as to the purchaser, or would permit its decree to be thus evaded.

It cannot be the law that pending the publication—*i. e.*, after the first publication has been made, but before the third publication, or even after the third publication, but before the expiration of the three weeks from the date of the first publication—the absent defendant can alienate the property in dispute so as to effectually evade the decree of the court.

*G. Q. Hall, Hall & Jacobson,* for appellee.

Our contention is that there was no "service of process" upon the defendants, Greene and Thomas, until after copy of summons had been mailed and publication for three weeks made, as required by statute, and the purchase by Meehan having been

made before such time without notice of the suit, we think he is within the saving clause of sec. 503.

The appellant contends that it acquired a lien on the property in question upon filing its bill and first publication, under sec. 503, which the law charged Meehan with notice of at the time of his purchase.

Section 3421, after authorizing service by publication, reads as follows: "Upon proof of publication of such summons for three weeks in some newspaper published in the county . . . and of the mailing of a copy of the summons to the defendant at his postoffice, where it is stated, the defendant may be thereafter proceeded against as if he had been personally served with a summons in the case in this state."

We submit that this latter section furnishes the definition of "service of process" by publication in cases under sec. 503 as in all other cases. It is unescapable that service of process in such cases is only after copy mailed, where the address is given as here, and publication completed. It is only after the doing of all the things required by law that our courts acquire jurisdiction of non-residents, and it is the law that a suit does not become *lis pendens* until jurisdiction has been acquired of defendants.

We are not without authority of precedents in this conclusion. 21 Am. & Eng. Ency. Law (2d ed.) announces, upon the authority of a great number of decisions collated in note 5, that *lis pendens* will commence upon service of process by publication only when the order to publish has been fully executed.

Appellant's construction leaves out of consideration secs. 3421 and 3422, and is entirely out of harmony with the history of sec. 503 and the previous general law of *lis pendens* in this state.

At the common law, and under the decisions of our court, a simple contract creditor, before judgment obtained and execution returned unsatisfied, could not exhibit his bill in such cases as this. *Ins. Co.* v. *Ligon*, 59 Miss., 305. Even after judgment

and execution the doctrine of *lis pendens* did not apply, unless the judgment sued upon was duly enrolled. *McCutchen* v. *Miller,* 31 Miss., 82. The legislature changed both rules in the enactment of sec. 503. Now, the law also was that the doctrine of *lis pendens* did not become operative until after service of process on the defendant. *Bacon* v. *Gardner,* 23 Miss., 60; *Allen* v. *Mandaville,* 26 Miss., 397; *Allen* v. *Poole,* 54 Miss., 323; *Chaffee* v. *Halpin,* 62 Miss., 1. It being the pendency, not the beginning or commencement, of a suit that commences the *lis pendens* lien (*Allen* v. *Mandaville, supra*), sec. 670 of the code has wrought a modification of the old rule as to when suits at law are *lis pendens.* But we find no such statute changing the rule as to suits in equity; nor are we unmindful of chapter 85, in the making of that statement, and shall directly discuss the bearing of the chapter.

Section 503 is, therefore, practically a declaration of the old general rule of *lis pendens* applied in favor of the simple contract creditor—at least, as to *bona fide* purchasers. We say it is merely a declaration of the old rule, because the doctrine of *lis pendens* had reference only to purchasers after suit. The "lien" that sec. 503 provides from the filing of the bill, except as to *bona fide* purchasers, is as against creditors, and has been held to be merely an order of priority among creditors. *Levy* v. *Marx,* 18 South. Rep., 575. But, however that part of the section may be, it contains an express provision, as under the old rule, that *lis pendens* as to *bona fide* purchasers shall not commence until after service of process upon the defendant in such bill; and we have demonstrated, on authority and express provision of the statute, that service of process by publication is as we have stated.

We submit that, even measured by the appellant's arbitrary definition of "service of process" by publication in such cases, the decree of the chancellor is correct. Section 3422, as we have shown, requires something else besides publication, as of equal or possibly more importance—to wit, the mailing of a

copy of the summons to the defendant contemporaneously with the handing of the summons to the publisher. If he intended his construction to be anything more than entirely arbitrary, he should have included this requirement of mailing notice along with first publication, as being service of process by publication within the meaning of sec. 503; but this would have been to give away his case, for the copy of summons in this case was not mailed until two days after the deed came into Meehan's hands and had been paid for, and seven days after it came into the hands of an escrow, the Meridian National Bank.

Chapter 85, Code 1892, either supplements or abrogates the previous law of *lis pendens.* It would seem that its provisions in their very nature were intended only to supplement.

There was no such thing as notice of pendency statutes at the common law, and therefore no requirement to file notice. By virtue of the doctrine of *lis pendens,* all the world was charged with constructive notice of the lien of a pending suit, seeking to enforce some lien, claim, right, or interest in property specifically described in the declaration or bill, and the reason of the rule was put upon various theories, one of which was that all persons were presumed to be attentive to proceedings in the courts of justice. 21 Am. & Eng. Ency. Law (2d ed.), 595, *et seq.* But all persons were not attentive, in fact, to such proceedings, and the application of the doctrine worked hardships upon innocent purchasers of property thus affected, and the best thought was toward devising some scheme whereby all persons might easily advise themselves without plowing through the records of a court, or, in fact, all the courts. The remedy was found in these statutes. *Id.,* 612, *et seq.* Mississippi dropped into line with ch. 85, Code 1892.

The legislature made no change in the *lis pendens* of sec. 503 and other equity suits (sec. 670 in reference to suits at law had been enacted long before ch. 85 was thought of); nor did it see fit to strike out the saving clause of sec. 503, as inconsistent, when the section was amended by ch. 64, p. 82, of the acts

of 1898. It seems to us to follow that the intention was that the creditor, taking advantage of sec. 503, should likewise abide its limitations, unaffected by anything that he might do under ch. 85. This must be true, else we should have the mere filing of notice creating *lis pendens* from the time of filing his bill, in favor, even, of simple contract creditors, who enjoyed no such favor at the common law, and now have standing in court only by virtue of sec. 503. A *lis pendens* notice does not of itself and apart from the rights sought to be established in the litigation creat a lien upon the property involved. 21 Am. & Eng. Ency. Law (2d ed.), 654. See subdivision X. This is also in line with the announcement of our court in *McCutchen* v. *Miller, supra.* The purpose of the statutes must not be overlooked. What is that purpose? Why, merely to provide a means of advertising that there is a case in which *lis pendens* applies, advertising the *lis pendens* only when it had become effective; otherwise there would be no use for it.

Truly, J., delivered the opinion of the court.

On February 5, 1902, the Fernwood Lumber Company, holding an unsecured debt against one J. H. Greene, a citizen of the state of Iowa, filed a creditors' bill in the chancery court, by virtue of the provisions of § 503, Code 1892, against said Greene and wife and one B. F. Thomas, also a non-resident, seeking to have canceled, as against its rights, a certain deed executed by said Greene and wife to Thomas, purporting to convey certain lands in Lauderdale county, this state. This deed, the bill of complaint averred, was fraudulent, collusive, and intended to hinder complainant in the collection of its just debt. The prayer of the bill was that complainant "have a personal decree against said J. H. Greene for the amount of the indebtedness, and that said lands pretended to be conveyed to said B. F. Thomas be condemned to be sold to pay the same, and, to this end, that proper process and publication issue and be made for said defendants." On the same day complainant filed and had

entered upon the *lis pendens* docket a notice in conformity with § 2783, Code 1892. On the 15th day of February publication was made for said non-resident defendants as prayed by the bill, and on the 20th of the same month a copy of summons was mailed to each of defendants as directed by statute. On the 10th day of February, 1902, as the result of previous negotiations, B. F. Thomas executed to James Meehan a deed conveying in fee simple the lands in question for a cash consideration of $1,200. This deed, with the draft for the purchase money, was forwarded through one of the banks of the city of Meridian to the purchaser, the purchase price was paid, and the deed actually delivered on the 18th day of February, 1902. The record discloses that Meehan, the purchaser from Thomas, was ignorant of the claim of the Fernwood Lumber Company against Greene, and had no actual notice that a bill of complaint had been filed or a notice placed upon the *lis pendens* docket. The suit instituted by the Fernwood Lumber Company against Greene and Thomas progressed regularly to its conclusion, and resulted in a decree granting complainant a judgment against Greene for the amount of its debt, and directing a cancellation of the deed from Greene and wife to Thomas, and subjecting the land in question to sale for the satisfaction of said indebtedness. When the land was advertised for sale under the direction of said decree, the Meehan-Rounds Lumber Company, which had acquired title by conveyance from James Meehan, learning of said proposed sale, filed its bill in the chancery court, prayed for and obtained an injunction forbidding said sale, and upon final hearing obtained a decree making said injunction perpetual. From that decree the Fernwood Lumber Company appeals.

The decision of this controversy necessitates a consideration of the provisions of § 503, Code 1892, under which appellant instituted its original suit. By virtue of that statute the creditor who has or has not obtained a judgment at law may file his bill to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering or delaying or

defrauding creditors, and may subject the property to the satisfaction of his demand. In such case, by operation of law, a lien is created in favor of the creditor upon the property described in his bill of complaint, from the filing thereof, "except as against *bona fide* purchasers before the service of process upon the defendant in such bill." In the instant case, therefore, the Fernwood Lumber Company, by filing its creditors' bill, established a lien upon the land in controversy from the date of such filing against all persons except *bona fide* purchasers, and as to such purchasers it also had a lien from and after the service of process upon the defendants. As the purchasers from Thomas (appellees here) occupy the attitude of *bona fide* purchasers for value, it becomes necessary, in order to determine which has the prior claim on the land, to ascertain when process is served upon a defendant to a bill of complaint. It must be noted that all parties made defendants to the original bill of complaint were non-residents of the state, and, as to such, service of process can only be had by publication in the manner and for the time prescribed by statute. The answer to the inquiry is found in § 3421, Code 1892, which expressly provides the manner in which publication for a non-resident defendant shall be made, and recites, after giving the form to be used: "Upon proof of publication of such summons for three weeks in some newspaper published in the county, and of the mailing of a copy of the summons to the defendant at his postoffice, where that is stated, the defendant may be thereafter proceeded against as if he had been personally served with a summons in the case in this state." This statutory provision is controlling upon this branch of the present discussion. The language is unambiguous, the meaning manifest. The defendant can be proceeded against as upon personal service had, only after the completion of the publication for the required number of times, and the mailing of a copy of the summons to his postoffice address, when the same is stated. In the case at bar the Meehan-Rounds Lumber Company acquired title by absolute conveyance for an adequate

consideration while acting in perfect good faith, and in total ignorance of the pendency of any suit, prior to the completion of the publication, and before any notice thereof had been mailed to the non-resident defendants. Being a *"bona fide* purchaser before the service of process upon the defendant in such bill," it falls within, and is protected by, the exception stated in sec. 503 *supra.*

But it is contended by counsel for appellant that, conceding this to be true, when sec. 503 is considered as standing alone, the rule announced by that section is now modified, if not abrogated, by ch. 85, Code 1892. We think this position untenable. The history of sec. 503, as disclosed by the previous adjudications of this court, demonstrates that it was intended to protect creditors against the fraudulent devices of their debtors and to defeat fraudulent conveyances of property designed to prevent the collection of just debts. This statute was enacted to render ineffective and unavailing all fraudulent and collusive conveyances made prior to the institution of a suit, and to prevent divestiture of title subsequent to the filing of the bill by which it was sought to subject the property to the payment of an existing debt, whether the same had been reduced to judgment or not. Section 503 was designed for the protection of those creditors who have no lien upon, right to, or interest in land; while ch. 85, Code 1892, was enacted for the benefit of those entitled to such interest, lien, or right by virtue of some secret equity, some undisclosed claim, or founded upon or evidenced by some unrecorded instrument. A creditors' bill filed under the provisions of sec. 503 is an effort to restore the title of the property involved to his debtor, who had fraudulently divested himself thereof, and which would, but for such fraud, have been subject to his debt. Successful in this, the law creates for him a lien upon the land in controversy, which relates back, as to other creditors and third persons in general, to the filing of the bill, and, as to *bona fide* purchasers, to the service of process upon defendant. Chapter 85 affords

a simple plan whereby those persons who, at the date of the institution of the suit, are vested with, or legally entitled to, a lien upon, right to, or interest in real estate, may protect themselves from subsequent divestiture of title to their detriment. The two statutes relate to entirely different and distinct classes of litigants. To make this more manifest, sec. 2786 provides that, if the person beginning any of the suits dealt with by ch. 85 shall fail to have the required notice entered upon the *lis pendens* docket, such suit "shall not affect the rights of *bona fide* purchasers or incumbrancers of such real estate, unless they have actual notice of the suit or levy." By this section protection of litigants who seek to take advantage of ch. 85 is made to depend upon the due filing of the notice therein authorized. By sec. 503 this protection is afforded after the service of process upon the defendant, without regard to the filing of any *lis pendens* notice and without reference to the knowledge or actual notice of the purchaser or incumbrancer. It is manifest, therefore, that the appellee, having purchased in good faith, for an adequate consideration, before service of process upon the defendant, must be protected in its title.

As not being necessarily before the court for consideration, we intimate no opinion as to when a suit is begun, within the purview of ch. 85, or from what date a *lis pendens* notice properly filed thereunder takes effect.

*The decree is affirmed.*